**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**LISA BLOCKER,**

       **Plaintiff,**

**v.**                                                  **Case No:   6:14-cv-882-Orl-31DAB**

**FIRST NONPROFIT INSURANCE**
**COMPANY,**

       **Defendant.**

## ORDER

This matter comes before the Court without a hearing on motions for summary judgment filed by the Plaintiff, Lisa Blocker ("Blocker"), (Doc. 29) and the Defendant, First Nonprofit Insurance Company ("First Nonprofit") (Doc. 30), as well as the responses in opposition and replies filed by both parties (Doc. 34-37).   Blocker brings the instant suit in her roles as parent and guardian of two minors, A.S.M. and M.L.S., and as assignee of Robert Clinton ("Clinton").

### I.   Background

This is an insurance coverage dispute.   First Nonprofit issued a Multiple Peril Policy (Doc. 30-14) (henceforth, the "Policy") and an Umbrella Policy (Doc. 30-15) to Neighbor to Family, Inc. ("Neighbor to Family"), a service provider for the Florida Department of Children and Families ("DCF").   Two dependent children in DCF custody – A.S.M. and M.L.S. – were placed, by Neighbor to Family, in a foster home operated by Clinton and his wife, Betty Dease-Clinton ("Dease-Clinton").   During the approximately two weeks the children were staying in the foster home, Clinton sexually assaulted A.S.M. and physically assaulted M.L.S. when he tried to intervene.   Clinton also took numerous photographs of his assaults on A.S.M.   Clinton was

subsequently convicted of lewd and lascivious molestation of a child under the age of 12 in violation of Fla. Stat. § 800.04(5)(b) and 40 counts of promoting a sexual performance by a child in violation of Fla. Stat. § 827.071(3).   He was sentenced to life in prison.

Blocker, the children's mother, filed suit (henceforth, the "Civil Suit") on behalf of the children against Clinton for the attacks and against Dease-Clinton, Neighbor to Family, and two other entities for failing to protect them.[1]   First Nonprofit provided a defense for Dease-Clinton and Neighbor to Family but declined to do so for Clinton.[2]   Clinton settled with Blocker and a $2,490,000 consent judgment was entered against him.   Blocker, as an assignee of Clinton, now seeks to recover the amount of that judgment from First Nonprofit, arguing that First Nonprofit breached its insurance contract with Neighbor to Family by failing to defend or indemnify Clinton.

**II.     Legal Standards**

In Florida,[3] construction of an insurance policy is a question of law for the court.   *Jones v. Utica Mutual Ins. Co.*, 463 So. 2d 1153, 1157 (Fla. 1985).   The insured has the burden of proving that a claim is covered by the policy.   *LaFarge Corp. v. Travelers Indem. Co.*, 118 F.3d 1511, 1516 (11th Cir.1997) (internal citations omitted).   Once the insured shows coverage, the insurer has the burden of proving an exclusion.   *Id.*   In construing policies, courts should read the policy as a whole, endeavoring to give every provision its full meaning and operative effect.   *U.S. Fire*

---

[1] Neither Dease-Clinton nor Neighbor to Family was accused of criminal conduct.

[2] First Nonprofit also paid $100,000 apiece on behalf of Dease-Clinton and Neighbor to Family to settle the claims against them.

[3] The policies at issue appear to have been issued and delivered in Maryland.   Because of this, it is not entirely clear that Florida law should apply in the instant case.   However, the parties have not taken issue with its application or pointed out any ways in which Florida law differs from Maryland law in regard to the instant case.   Accordingly, the Court will interpret the insurance policies in accordance with Florida law.

*Ins. Co. v. J.S. U.B., Inc.,* 979 So. 2d 871, 877 (Fla. 2007).   Exclusionary clauses are read strictly and in a manner that affords the insured the broadest possible coverage.   *Indian Harbor Ins. Co. v. Williams*, 998 So. 2d 677, 678 (Fla. 4th DCA 2009).

**III.   Analysis**

In the final version of her complaint in the Civil Suit (Doc. 30-10), Blocker accused Clinton of assaulting A.S.M. and M.L.S. and sued him on their behalf under a number of different legal theories: Assault and Battery (Count XIII and XIV); Intentional Infliction of Emotional Distress (Count XV); Negligent Infliction of Emotional Distress (Count XVI); Negligent Failure to Provide Timely Medical Care and Services (Count XVII); and Negligent Failure to Timely Report Abuse Claims (Count XVIII and XIX).

In Coverage H of the Policy,[4] titled "Sexual Abuse or Molestation Liability," First Nonprofit promises to pay

> **those sums that the Insured becomes legally obligated to pay as damages arising out of sexual abuse or sexual molestation of any person to which this coverage applies**. . . .   This coverage applies only to sexual abuse or sexual molestation which occur during the Term of Coverage.   The damages must be caused by a sexual abuse occurrence….   We will have the right and duty to defend any suit seeking those damages.   We will not provide a defense or pay attorneys' fees or defense costs, however, for any loss, claim proceeding, suit or any other legal or administrative action or part thereof to which this coverage does not apply and/or for which there is no coverage or indemnification afforded except at our sole discretion.

(Doc. 30-14 at 72) (emphasis added).

---

[4] Except for policy limits, the Umbrella Policy includes the same terms and conditions as the Policy.

For purposes of Coverage H, the Policy defines "Insured" as the "First Named Insured designated in the Declarations."  (Doc. 30-14 at 73).  In the instant case, Neighbor to Family is the First Named Insured.  Also for purposes of Coverage H, "any individual who is an executive officer, director, trustee, employee or volunteer thereof **is included in the definition of Insured while acting within the scope of their duties as such**."  (Doc. 30-14 at 73) (emphasis added).  First Nonprofit does not concede that Clinton was an "employee" of Neighbor to Family, but argues that, even assuming Clinton was an employee, he was not an "Insured" for purposes of the Civil Suit because he was not acting within the scope of his duties when he assaulted the children  Therefore, First Nonprofit argues, the Policy did not provide coverage to him for the claims asserted by Blocker in the Civil Suit.

Blocker argues that Clinton was, in fact, acting within the scope of his duties as a foster parent when he committed his crimes, because if he had not been a foster parent, "he would not have been caring for the children and they would not have been abused while in his care; caring for the children was within his duties as a foster parent."  (Doc. 34 at 7).   This misses the point. It is true that being a foster parent gave Clinton access to the children, so as to fulfill his duty to care for them, but that is not to say that he was acting within the scope of his duties as a foster parent when he abused that access to attack them.   The sorts of assaults at issue in this case cannot possibly considered to be part of the duties of any foster parent, or an outgrowth of those duties.  *See, e.g., Hemmings v. Jenne*, 2010 WL 4005333 (S.D. Fla. 2010) (finding that police officer who committed sexual assault while working was not acting within scope of duties when he did so, and listing Florida cases reaching similar results).   The Court finds that Clinton was not acting within the scope of his duties when he committed the assaults at issue in the Civil Suit, and

therefore neither the Policy nor the Umbrella Policy provided coverage because he did not qualify as an "Insured" during the relevant times.

Even if one could find that Clinton was acting within the scope of his duties when he attacked A.S.M. and M.S.L., First Nonprofit argues that exclusionary language would have barred any coverage for him. In particular, First Nonprofit points to the following language from Coverage H:

> Exclusions
>
> This coverage, with respect to any particular Insured, does not apply to:
>
> 1. Damages arising out of the perpetration of any criminal act by that Insured.
>
> 2. Damages expected or intended from the standpoint of the Insured.

(Doc. 30-14 at 72). It is undisputed that the damages at issue in the Civil Case arose out of Clinton's criminal acts, and that his acts were intentional. Blocker argues that these exclusions create an ambiguity that must be resolved in her favor, because Coverage H insures against sexual abuse and molestation, which are always criminal and intentional acts. (Doc. 34 at 10).

Policy language is ambiguous if the language is susceptible to more than one reasonable interpretation, one providing coverage and the other limiting coverage. *Auto–Owners Ins. Co. v. Anderson*, 756 So.2d 29, 34 (Fla. 2000). The Court finds no such ambiguity here. Coverage H insures against damages resulting from sexual abuse or molestation, but only for those Insureds who have not, themselves, committed such acts. Thus the Policy would provide coverage for those such as Dease-Clinton and Neighbor to Family, who were alleged to have negligently failed to prevent the assaults, but not for Clinton, who was convicted of committing the assaults.

Finally, First Nonprofit argues that Florida public policy prohibits allowing parties to insure against their own intentional and criminal acts, for fear that this would encourage the

- 5 -

commission of such acts.  *See Ranger Ins. Co. v. Bal Harbour Club, Inc.*, 549 So. 2d 1005, 1007 (Fla. 1989) (stating that it is "axiomatic in the insurance industry that one should not be able to insure against one's own intentional misconduct" and holding that public policy prohibited indemnification for a loss resulting from an intentional act of religious discrimination).  *See also State Farm Fire and Cas. Co. v. Tippett*, 864 So. 2d 31, 36 (Fla. 4th DCA 2003) ("Florida courts have unequivocally held that no insurance coverage exists for child molestation.").   Therefore, even assuming *arguendo* that Clinton was an "Insured" and that the exclusions described above did not bar coverage for his acts, the Policy and Umbrella Policy would not be enforceable.

Blocker implicitly acknowledges that First Nonprofit is correct on this point.   Her only response is to argue that the state's policy in favor of compensating innocent victims should trump its policy opposing insuring against one's own criminal conduct.   Even if Blocker is correct, that determination must be made by the Florida legislature, rather than this court.

### IV. Conclusion

As set forth above, the Court finds that the Policy and the Umbrella Policy did not (and could not) provide coverage for Clinton in regard to the acts at issue in the Civil Suit.  First Nonprofit therefore had no duty to defend or indemnify Clinton and has not committed a breach by failing to do so.  Accordingly, it is hereby

**ORDERED** that the motion for summary judgment filed by the Plaintiff, Lisa Blocker (Doc. 29) is **DENIED** and motion for summary judgment filed by the Defendant, First Nonprofit Insurance Company (Doc. 30) is **GRANTED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 5, 2015.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party